# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# ABERDEEN DIVISION

**STANLEY MONTGOMERY,**                                                                                    **PLAINTIFF**

**vs.**                                                     **CIVIL ACTION NO.: 1:12CV73-A-A**

**TIM PALMER, et al.,**                                                                       **DEFENDANTS**

## REPORT AND RECOMMENDATION

The undersigned held an evidentiary hearing in this case on August 7, 2013. The plaintiff Stanley Montgomery proceeded *pro se*, and the defendants were represented by counsel. Both parties called witnesses and entered exhibits. Having heard the testimony and reviewed the exhibits, the undersigned makes the following recommendation.

### A. Facts and Procedural Background

Montgomery was formerly a pretrial detainee housed at the Winston-Choctaw County Regional Correctional Facility ("WCCRCF") in Louisville, Mississippi. On March 5, 2012, he filed a civil rights action under 42 U.S.C. § 1983 in this court [Case No. 1:12cv53], along with a motion requesting permission to proceed *in forma pauperis*. The court sent Montgomery forms and directed him to complete the appropriate form to certify either that he wished to continue the lawsuit or he wished to dismiss the case voluntarily. Montgomery chose to pursue the lawsuit, completed the appropriate form and requested prison officials at WCCRCF to return it to the court by certified mail. On March 8, 2012, the prison mail clerk delivered Montgomery's mail to the United States Post Office to be sent via certified mail, and his inmate account was debited $5.75 for postage fees. Montgomery maintains that he never received a receipt showing that his envelope in fact was mailed by certified mail, and he never received a certified mail return receipt evidencing delivery to the court. There is no question, however, that the court received

1

the form on March 9, 2012. [Trial Exhibit # D-4].

On March 30, 2012, Montgomery filed this case, also under Section 1983, claiming that his certification form in Case No. 1:12cv53 was not delivered to the court via certified mail, but by regular mail, which would have required only a $0.45 stamp. He named as defendants Warden Tim Palmer; Inmate Account Clerk Betty Cockrell; Mail Clerk Jeffery Davis; and the Winston-Choctaw County Regional Correctional Facility ("WCCRCF"). Montgomery maintains that despite his complaints, these correction officials did not refund the remaining $5.30 to his prison account. He testified that he had no funds in his inmate account after the alleged misuse of his funds, and as a result he could not afford to make commissary purchases after March 8, 2012.

It is undisputed that Montgomery delivered his form to mail clerk Davis for mailing via certified mail, and that his account was charged $5.75 for the certified mail service. It is also undisputed that the court received the plaintiff's mailing, and that the envelope in which the plaintiff placed his forms for certified mailing shows metered postage paid in the amount of $5.75.[1] Despite the amount of postage affixed to the envelope, there is no evidence that it was delivered other than by standard mail service. However, plaintiff does not contend that Montgomery's claims in No. 1:12cv53 were prejudiced by the fact that his certification form was not returned to the court by certified mail. The issue for the court's determination, rather, is whether Montgomery's constitutional due process rights were violated by the alleged deprivation of $5.30 [the difference between the cost of certified mail and regular mail], and if so, what remedy is appropriate.

---

[1] When the plaintiff's acknowledgment and certification form was filed with the court in No. 1:12cv53, the clerk also filed the envelope that contained the form. The envelope bears a metered postage stamp of $5.75. The court takes judicial notice of this fact. *See* No. 1:12cv53-NBB-DAS, Docket # 4.

## B. The Prison Litigation Reform Act

Because Montgomery was incarcerated when he filed this case, the Prison Litigation Reform Act ("PLRA") applies to this case. *See* 28 U.S.C. § 1915(g). The PLRA requires prisoners to exhaust any available administrative remedies before filing suit under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997e(a); *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir. 2012). There is no futility exception to the exhaustion requirement, and inmate must exhaust even where the relief sought is unavailable through the administrative process. *See Hicks v. Lingle*, 370 Fed.Appx. 497 (5th Cir. 2010), citing *Booth v. Churner*, 532 U.S. 731, 739-41 & n.6 (2001); *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). As failure to exhaust is an affirmative defense, the burden of proving that failure is on a defendant in a PLRA case. *See Jones v. Bock*, 549 U.S. 199, 217, 127 S.Ct. 910, 922 *(*2007).

Warden Palmer testified at the hearing that the WCCRCF grievance procedure requires an inmate to first file a grievance, which is then transferred to the staff member to whom the grievance applies. That staff member responds to the grievance and returns the form to the inmate. According to Warden Palmer, the inmate may then choose to accept the response as satisfactory and end inquiry into the grievance, or he can choose to seek a second-step response. If the inmate chooses to proceed to the second step of the grievance procedure, the warden reviews the grievance, issues a response, and then returns the form to the inmate. After the warden has issued a second-step response, the grievance procedure is complete.

The plaintiff alleges in his complaint that he filed a grievance about his postage on March 21, 2012, and that he did not receive a response. At the hearing defendants introduced the plaintiff's grievance file from WCCRCF through Warden Palmer, who testified that he never saw a grievance filed by the plaintiff concerning postage deducted from his inmate account.

3

Defendant Davis, the inventory mail clerk at WCCRCF, also testified that he could not recall receiving a grievance related to the mail services provided to the plaintiff. The plaintiff produced no documentation showing that he attempted to exhaust his administrative remedies by completing WCCRCF's grievance procedure, and the file contains no such complaint. [Trial Exhibit # D-6]. Therefore, the court finds from the credible testimony of Davis and Palmer, along with a review of Montgomery's institutional grievance file, that plaintiff failed to exhaust his administrative remedies before filing this § 1983 action. Accordingly, the plaintiff is not entitled to relief based on his failure to exhaust his administrative remedies.

### C. Due Process

To state a valid claim under 42 U.S.C. § 1983, a plaintiff must "allege a violation of a right secured. . . by the Constitution or laws of the United States" by a state actor. *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013). Section 1983 is not a source of substantive right, but rather, is a vehicle for "vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Courts have routinely held that prisoners have a protected interest in their inmate accounts and may not be deprived of that interest absent procedural due process of law under the Fourteenth Amendment of the United States Constitution. *See, e.g., Rosin v. Thaler*, 417 Fed.Appx. 432 (5th Cir. 2011); *Reynolds v. Wagner*, 128 F.3d 166, 179 (3rd Cir. 1997); *Campbell v. Miller*, 787 F.2d 217, 222 (7th Cir. 1986). Therefore, Montgomery, who alleges that he was deprived of the funds in his inmate account due to the actions of prison officials, states a claim under § 1983. *Birl v. Thaler*, 470 Fed.Appx. 362, 363 (5th Cir. 2012) (noting that where a prisoner claims property deprivation by a prison official, he has presented a cognizable § 1983 claim).

However, because the federal constitutional concern is one of due process, Montgomery cannot succeed on his claim merely by asserting that he was deprived of his property. *See Zinermon v. Burch*, 494 U.S. 113, 126 (1990) ("The constitutional violation actionable under § 1983 [for a procedural due process claim] is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process."). Rather, "[u]nder the *Parratt/Hudson* doctrine, a state actor's random and unauthorized deprivation of a plaintiff's property does not result in a violation of procedural due process rights if the state provides an adequate postdeprivation remedy." *Alexander v. Ieyoub*, 62 F.3d 709, 712 (5th Cir. 1995); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541-44 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). The *Parratt/Hudson* doctrine rests upon the premise that a state cannot be expected to provide pre-deprivation remedies for unanticipated acts by its employees, and thus, post-deprivation remedies are the only feasible means of addressing the deprivation of property. *Davis v. Bayless*, 70 F.3d 367, 375 (5th Cir. 1995).

At the evidentiary hearing held in this case, Montgomery testified that he sent several pieces of certified mail while housed at WCCRCF and that the mailing at issue in this case is the only mail with which he had any problems. Because he was randomly deprived of his property based on an unauthorized act by the defendants, the *Parratt/Hudson* doctrine is applicable to his case. The pertinent issue, then, is whether Montgomery has adequate post-deprivation remedies available to him under Mississippi law.

The Mississippi Tort Claims Act (MTCA), passed in 1996, barred inmates from recovering on any claim against a "governmental entity and its employees acting within the

course and scope of their employment or duties[.]" Miss. Code Ann. § 11-46-9(1)(m) (exempting liability for any claim "[o]f any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution. . ."). Since that time, however, an inmate has been allowed to successfully allege property deprivation by prison officials under Article III of Mississippi's Constitution. *See Johnson v. King*, 85 So.3d 307 (Miss.App. Mar. 27, 2012) (finding confiscation of inmate's drinking mug to violate the Takings Clause of the state constitution). As the conflict between Article III and the MTCA must be resolved in favor of the constitutional provision, it appears that the MTCA does not prevent Montgomery from pursuing his claim in State court.[2] *See, e.g., Learmonth v. Sears, Roebuck and Co.*, 710 F.3d 249, 258 (5th Cir. 2013) (noting that Mississippi courts generally resolve conflict between statutory and constitutional provisions in favor of the constitutional provision). Because Montgomery has "the prospect of compensation" under Mississippi's Constitution, he has an adequate post-deprivation remedy under State law. *McClure v. Biesenbach*, 355 Fed.Appx. 800, 805 (5th Cir. 2009) ("Post-deprivation process is adequate if it allows the prospect of compensation for the loss suffered."); *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982) ("The Due Process Clause grants the aggrieved party the opportunity to present his case and have its merits fairly judged."). Therefore, Montgomery fails to establish that he suffered a federal constitutional violation as a result of the property

---

[2] The Fifth Circuit has held that Mississippi's statutory post-deprivation remedies for civil litigants satisfy due process. *Nickens v. Melton*, 38 F.3d 183 (5th Cir. 1994). *Nickens* was decided before passage of the MTCA, however, and subsequent cases citing *Nickens* with approval do not address the relationship between Mississippi's statutory remedies, *e.g.*, claim and delivery and conversion, and the MTCA. *See, e.g., White v. Epps*, 411 Fed.Appx. 731 (5th Cir. 2011). Therefore, the court does not rely upon *Nickens* or its progeny for its decision in this case.

deprivation alleged in this case.

### D. Negligence

Defendant Davis testified that he had never mailed a piece of certified mail before the plaintiff requested that he send some legal documents by certified mail in March 2012. Davis went to the post office in Louisville, Mississippi, to determine the appropriate procedure, and he learned that the certified postage fee would be $5.75. He testified that he informed Montgomery of the fee that would be required, and Montgomery responded that he wanted Davis to return the form to the court using certified mail. Davis put metered postage in the amount of $5.75 on the plaintiff's envelope and took the mail to the front window clerk at the Louisville, Mississippi, Post Office on March 8, 2012. Davis testified that when he left the mail with the postal clerk, he asked that the mail be sent certified, but that he did not fill out the certified mail slip or receive a receipt. Betty Cockrell, WCCRCF inmate account clerk, testified that she deducted $5.75 from Montgomery s inmate account on March 8, 2012, to pay for the postage.

According to Montgomery he began questioning prison officials about why he had not received a certified mail return receipt sometime around March 21, 2012. He testified that WCCRCF officials told him that they could not locate the certified mail return receipt card, and Davis confirmed that he was unable to locate a certified mail return card. The plaintiff then filed this action on March 26, 2013. Both Davis and Cockrell testified that after they learned of this lawsuit from the court's pro se law clerk, they went together to speak to Montgomery and informed him that the disputed $5.30 would be returned to his inmate account if he would dismiss this case. Both Davis and Cockrell testified that the plaintiff refused. Montgomery, however, testified that no one associated with WCCRCF ever offered to return his money.

Montgomery's "Resident Transaction Details" log, introduced as an exhibit through inmate account clerk Cockrell, shows that $5.75 was deducted from Montgomery's inmate account on March 8, 2012, for certified mail postage, after which $21.47 remained in Montgomery's account. Although Montgomery testified that he told his girlfriend not to send him any more money after prison officials deducted the wrong amount of postage from his account, his account details show that additional deposits were made to his account in April, May, June, and July of 2012, and that the account did not begin to show a consistently negative balance until August 2012. Therefore, the court rejects the plaintiff's claim that he was without any funds after March 8, 2012 due to the defendants' erroneous deduction from his inmate account funds. Montgomery acknowledged at the hearing that WCCRCF officials continued to send his legal mail after he had a consistently negative account balance in August 2012, and he agreed that he still owes WCCRCF over $15.00 in unpaid postage debt.[3] He also stated that aside from the March 2012 incident giving rise to this lawsuit, he never had any difficulty in sending and receiving legal mail through WCCRCF.

As the court has already noted, the envelope bearing the contested postage at issue in this case bears metered postage paid in the amount of $ 5.75. The envelope does not bear any markings that would indicate that it was sent by certified mail. However, the court finds Davis's testimony credible and finds that Davis did attempt to send the plaintiff's documents to the court through certified mail by placing the appropriate amount of postage on the envelope, delivering the envelope to the front window clerk at the Louisville Post Office, and requesting that the mail

---

[3] The plaintiff's account details also show that upon his release from WCCRCF in October 2012, the plaintiff owed the facility a total of $47.49 in copy, postage, and medical fees.

be sent certified.  The court further finds that any failure by the defendants to follow the proper procedure to complete the certified mailing process is at most a negligent act, and the negligent deprivation of property by prison officials does not create a civil rights claim.  *See Daniels v. Williams*, 474 U.S. 327, 328, 332-33 (1986) ("[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property."); *Ortiz v. Giles W. Dalby Correctional Facility*, 396 Fed.Appx. 144 (5th Cir. 2010); *Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988).  Accordingly, the plaintiff fails to state a claim against the defendants.

In this case, the plaintiff's account was charged $5.75 for postage that was, in fact, metered onto an envelope bearing his legal mail.  Having reviewed the evidence in this case and heard the testimonies of the parties, the court finds that any loss the plaintiff suffered was accidental and caused no adverse effect on the case to which the mail related.  The postage applied to the envelope was $5.75; it should have been only $.45.  The mailed item got to the court clerk and was filed the next day.  The court finds that testimony by Cockrell and Davis was fully credible, and that the WCCRCF officials' good faith offer to reimburse the plaintiff for the alleged deprivation of funds was met with the plaintiff's refusal.  Moreover, any loss suffered by the plaintiff is mitigated by the much larger debt he still owes to WCCRCF.

For all of the foregoing reasons, the undersigned respectfully recommends that this action be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### Handling of Objections, Acknowledgment of Receipt

The appropriate procedures for filing objections to these findings and recommendations are found in 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b).  Objections must be in writing

and must be filed within fourteen (14) days of this date, and "a party's failure to file written objections to the findings, conclusions, and recommendations in a magistrate judge's report and recommendation within [14] days after being served with a copy shall bar that party, except on grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. . . .". *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc) (citations omitted); *see also United States v. Carrillo-Morales*, 27 F.3d 1054, 1061-62 (5th Cir. 1994), *cert. denied*, 513 U.S. 1178 (1995).

The plaintiff must acknowledge receipt of this report and recommendation by signing the enclosed acknowledgment form and returning it to the clerk of the court within fourteen (14) days of this date. Failure to comply with the requirements of this paragraph may lead to dismissal of this lawsuit under Fed. R. Civ. P. 41(b) for failure to prosecute the claim and for failure to comply with an order of the court.

Respectfully submitted, this, the 6th day of September, 2013.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE